**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0656-17T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

BRENDON M. JAMES, a/k/a
BRANDON M. JAMES, JAMES
SENU, and BRANDON SENU,

      Defendant-Appellant.

_____

Submitted October 31, 2018 – Decided December 17, 2019

Before Judges Fuentes and Accurso.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Accusation No. 17-02-0065.

Joseph E. Krakora, Public Defender, attorney for appellant (Ruth Elizabeth Hunter, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Pursuant to a negotiated plea agreement with the State, defendant Brendon M. James pled guilty to second degree unlawful possession of a handgun and third degree possession of marijuana with intent to distribute. More than a month after the plea hearing, defendant moved to withdraw his guilty plea under State v. Slater, 198 N.J. 145 (2007). The Criminal Part judge who presided over the plea hearing denied defendant's motion and sentenced him in accordance with the plea agreement. Defendant originally appealed the trial court's decision under the summary proceeding provided in Rule 2:9-11. The matter was thereafter transferred to the regular appellate calendar.

Defendant argues the trial court erred in denying his motion to withdraw his guilty plea because he did not provide a valid factual basis. Alternatively, defendant argues we should remand the matter for resentencing because the sentencing judge "incorrectly believed" he was not eligible for a waiver of the mandatory period of parole ineligibility under the Graves Act, N.J.S.A. 2C:43-6. We reject these arguments and affirm.

In Count Three of a Mercer County indictment returned on May 25, 2016, the grand jury charged defendant and codefendants Darnel Biggs and Shawn Reid with third degree possession of marijuana with intent to distribute, in a

2

quantity of no less than one ounce but no more than five pounds, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(11). Count Four charged defendant and his codefendants with second degree possession of marijuana with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-5 and N.J.S.A. 2C:35-7.1; and Count Five charged defendant and his codefendants with fourth degree possession of marijuana in a quantity of more than fifty grams, N.J.S.A. 2C:35-5-10a(3).

Counts One, Two, and Six only involved charges against Biggs. Count One charged Biggs with second degree unlawful possession of a Taurus "Ultra Lite" .38 caliber revolver, N.J.S.A. 2C:39-5b and N.J.S.A. 2C:58-4; Count Two charged Biggs with second degree unlawful possession of a Taurus "Ultra Lite" .38 caliber revolver, while in the course of committing or attempting to commit a drug-related offense, N.J.S.A. 2C:35-5 and N.J.S.A. 2C:39-4.1a. Count Six, the last count of the indictment, charged Biggs with second degree possession of a Taurus "Ultra Lite" .38 caliber revolver, while having been previously convicted of third degree distribution of a controlled dangerous substance, N.J.S.A. 2C:39-7b.

On February 3, 2017, defendant appeared before the Law Division, Criminal Part at a hearing to prosecute a motion to suppress the evidence seized

by law enforcement authorities that formed the basis of the charges against him and codefendant Biggs. At this hearing, defendant's counsel addressed the motion judge as follows:

> DEFENSE COUNSEL: Mr. James has indicated that he wants to resolve this matter for unlawful possession of a handgun second degree, five over three-and-a-half. The DAG [(Deputy Attorney General)] informed me that he would also have to plead to possession with intent to distribute, a third degree offense, because it is marijuana over an ounce and that would be a three flat concurrent. I should indicate on the record that Mr. James, since he's not charged with any handgun offenses, he is not charged with unlawful possession, he's also not charged with certain persons which, in fact, Mr. James is because he does have a prior burglary conviction. As --
>
> THE COURT: [Is] . . . the three flat that the State was offering concurrent or consecutive?
>
> DEFENSE COUNSEL: It's concurrent, Your Honor.
>
> THE COURT: Okay.

Defense counsel explained to the judge that she had discussed with defendant the possibility of a plea agreement for over two hours that day and on several other occasions. Defense Counsel made clear on the record that defendant "was very adamant in the fact that he wanted to resolve this matter in this fashion." Defense counsel also represented to the judge that she had spoken

4

with the attorney who represented codefendant Biggs to confirm Biggs was willing to accept the terms of the plea agreement. Defense counsel stated:

> [W]e have a resolution on the table if the parties are willing to enter it where Mr. James will plead to the handgun and the drugs recovered together upstairs in the bedroom and that Mr. Biggs will be pleading to the drugs that were recovered downstairs on the first floor. If that is, in fact, a -- and Mr. Reid would receive a dismissal. If that is, in fact, a plea agreement that Mr. Biggs and Mr. James are willing to enter into today, that is what is presently on the table.
>
> . . . .
>
> I just want to also indicate on the record it's my understanding that if this matter is not resolved today, the offer of five with a three-and-a-half with a concurrent three flat for Mr. James would no longer be available to him from the Deputy Attorney General's Office.

As these discussions continued, the DAG confirmed he had the authorization from his superiors to enter into this plea agreement. At this point, defendant addressed the judge directly and stated:

> I've been trying to resolve this from day one. You know, when they came to my house, you know, I'm the owner . . . I went in the house. I've been acknowledging the gun and the drugs being mine, not even the drugs downstairs. They're really his. Everything there was mine.
>
> . . . .

A-0656-17T1

I want to plead guilty today.

The DAG prepared an Accusation charging defendant with second degree unlawful possession of a handgun. The terms of the plea agreement required defendant to plead guilty to the second degree charge in the Accusation and to Count Three in the indictment, which charged him with third degree possession of marijuana with intent to distribute. In exchange, the State would recommend that the court sentence defendant to a term of five years, with forty-two months of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6c, on the second degree unlawful possession of a handgun charge and impose a term of three years flat on the marijuana charge. Both sentences were to run concurrently. The State would also dismiss the remaining counts in the indictment related to defendant.

Defense counsel confirmed these were the terms of the plea agreement and stated defendant was "prepared to provide a factual basis." Defense counsel also noted for the record that the DAG had agreed to "an extended sentencing date" of July 14, 2017, more than five months later. The judge stated: "I'm okay with it subject to the defendant remaining offense free." The judge then asked defendant a series of questions to ensure he understood the ramifications of his decision to plead guilty.

6

In response to the judge's questions, defendant stated under oath that he was twenty-three years old, had graduated from high school, and attended "some college classes" in Criminal Justice. Defendant acknowledged that he had reviewed and answered the questions on the plea form with the assistance of his attorney. He was in good physical and mental health and was not under the influence of any substance or medication that impaired his judgment. Defendant told the judge that he understood the terms of the plea agreement, was aware of his constitutional rights, and was pleading guilty voluntarily. Defendant also indicated he was satisfied with the services provided by his attorney.

Defense counsel also questioned defendant to establish a factual basis for his guilty plea to second degree unlawful possession of a handgun. The record shows defendant admitted that police officers entered his residence looking for someone else. In the process of searching for this person, the officers found a .38 caliber handgun in defendant's bedroom.[1] Defendant admitted he acquired this handgun without the permit required by law.

The only issue defendant contested in the course of providing the factual basis concerned whether he ever possessed the handgun outside of his residence.

---

[1] Defendant stipulated the handgun the police recovered from his bedroom was the .38 caliber Taurus revolver identified in the Accusation.

This controversy was finally resolved when defendant admitted he carried the handgun outside of his residence at the time he purchased it. The following colloquy illustrates this point:

> THE COURT: -- because there's no doubt that it was -- while it might not have been outside of the house that day or the day before, it had to have been outside of the house at some point.
>
> DEPUTY ATTORNEY GENERAL: That was my line of questioning. It had to have been somewhere prior to that date to be brought into the house.
>
> DEFENDANT: Yes, that's true.
>
> DEFENSE COUNSEL: Okay, so prior to July 1st, 2015 it was brought into the house?
>
> DEFENDANT: Yes.
>
> DEFENSE COUNSEL: And you did not have a license to carry that gun outside of the house?
>
> DEFENDANT: No.
>
> DEFENSE COUNSEL: And you brought it into the house?
>
> DEFENDANT: Yes.
>
> THE COURT: How long had you lived there?
>
> DEFENDANT: I lived there since November of 2014.

A-0656-17T1

THE COURT: Okay, so some time during that time period you brought it into the house?

DEFENDANT: Yes.

THE COURT: Okay.

DEFENSE COUNSEL: And you knew what you were doing when you were carrying it that you did not have a license to carry it?

DEFENDANT: Yes.

The DAG also argued that since defendant had been convicted of burglary at the time the police found the handgun in his bedroom, it was unlawful for him to possess a handgun anywhere under N.J.S.A. 2C:39-7(b). Defendant also provided a factual basis for his guilty plea to third degree possession of marijuana with intent to distribute. We will not describe the factual basis for this crime since defendant is not challenging this conviction on appeal.

On March 10, 2017, defendant and the attorneys returned before the judge to correct a data entry problem. Because Biggs was the only person charged under the indictment with the second degree offense of unlawful possession of the handgun, the judiciary's computer system for criminal cases known as Promis/Gavel did not accept defendant's guilty plea to the same offense as part of an Accusation. Defense counsel explained that to correct this "technical glitch in the system," defendant had to sign a new waiver of indictment form.

A-0656-17T1

The record shows the judge thoroughly explained to defendant the technical nature of the problem and reassured him this was intended to avoid any potential future misunderstanding or unintentional prejudice. In the judge's words: "you can't have an accusation number and an indictment number under the same case number[.]"

Despite acknowledging everything that the judge and the attorneys explained to him on the record, defendant unexpectedly told the judge: "I understand that. I just don't -- I feel like I don't want to sign anything." The judge explained to defendant that if he did not sign these documents, it would be treated by the court as a request to withdraw the guilty plea he entered on February 3, 2017. This prompted the following exchange between defendant and the judge:

> DEFENDANT: This is my reason for pleading guilt[y]. On the day of the motion [defense counsel] was supposed to subpoena my witness. She didn't subpoena my witness. I was stuck between a rock and a hard place.
>
> THE COURT: You weren't stuck in any place. Let's stop with that right now.
>
> DEFENDANT: All right. Well, then, that's where I was at. Where's my witness?
>
> THE COURT: You came out of nowhere, volunteered -- no, no, stop. You came out of nowhere. We were

getting ready to do a testimonial suppression hearing and volunteered to plead guilty to a gun charge that you weren't even charged with.

DEFENDANT: That's because it belonged to me. It's not about whether I'm charged with --

THE COURT: Okay. But -- so let's not get into [defense counsel] didn't do the things [defense counsel was] supposed to do. You volunteered to plead guilty to a gun charge, a second degree charge that was substantially more serious in terms of what your custodial exposure was than this drug charge.

I don't know anything about any witnesses but it's -- you have to make some sort of a decision about where you're going with this. If you want to file a motion to get your plea back I have no choice but to let you do that. You don't want your plea back, we have to fix the technical problems that are here.

DEFENDANT: I want my plea back. I want to go to trial.

THE COURT: All right. Well, you're going to have to file that motion.

            . . . .

THE COURT: He wants to go to trial on what, on the gun charge or the drug charge?

DEFENDANT: Anything. It don't matter. I don't want to take this plea. Unless they give me a better plea –

THE COURT: All right. Well --

DEFENDANT: -- then I want to go to trial.

11

[(Emphasis added).]

Represented by different counsel, defendant appeared before the trial court on July 25, 2017 to argue his motion to withdraw his guilty plea. Defense counsel argued that defendant did not provide an adequate factual basis to support his guilty plea to second degree unlawful possession of a handgun under N.J.S.A. 2C:39-5b. Defense counsel noted: "He stated he brought the . . . gun in some time before July 1st. That was the extent of it." Defense counsel argued the court failed to consider defendant's right to possess a handgun in his own home pursuant to N.J.S.A. 2C:39-6(e), which provides, in relevant part: "[n]othing in subsections b., c., and d. of N.J.S.2C:39-5 shall be construed to prevent a person keeping or carrying about his . . . residence[.]" Finally, defense counsel argued the State's fallback position concerning defendant's prior burglary conviction was unavailing. According to defense counsel, defendant's prior criminal record only applies if he had been charged with the offense codified in N.J.S.A. 2C:39-7(b), which makes a person previously convicted of burglary or any other of the offenses listed therein, guilty of second degree unlawful possession of a handgun, regardless of the circumstances.

The State argued that defendant's burglary conviction rendered him per se ineligible to invoke the statutory defense under N.J.S.A. 2C:39-6(e). Thus, the

12

State argued that defendant's admission that he acquired a handgun without a license while being legally prohibited from having a handgun was a sufficient factual basis to support his plea.

The judge reviewed the transcripts of the plea hearing held on February 3, 2017 as well as defendant's impromptu request to withdraw his guilty plea on March 10, 2017. The judge first summarized the factors the Supreme Court established in Slater for deciding a defendant's motion to withdraw a guilty plea: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." 198 N.J. at 150. The judge then made the following findings:

> Defendant says, anything, it don't matter, I don't want to take this plea unless they give me a better plea. A clear, unequivocal statement that unless he got a better plea offer, he wanted to go to trial. Direct, honest, clear statement as to what his true motivation was; that he wanted a better number. And that comes on the heels of extensive colloquy during the plea hearing where he was advised not just what the State's recommendation was but the near inevitability of the five-year sentence with the three-and-a-half year stipulation of parole ineligibility.

A-0656-17T1

The judge concluded defendant did not raise a colorable claim of innocence. He proactively sought to plead guilty to second degree unlawful possession of a handgun, a crime he had not been charged with committing, to absolve Biggs. Defendant's criminal history rendered him per se ineligible to lawfully possess a handgun. The record reflects defendant was fully apprised of the penal consequences of his guilty plea, including the mandatory period of parole ineligibility required by the Graves Act. The judge thus denied defendant's motion to withdraw his guilty plea.

Defendant appeared for sentencing before the court on August 11, 2017. The court found defendant had two prior convictions for burglary, committed on May 30, 2012 and June 1, 2013, respectively. He was sentenced on September 16, 2013, to two three-year terms of probation to run concurrently, with 226 days of jail time credits. At the time, defendant resided with his girlfriend, her daughter, and defendant's son. The judge noted that the sentence related to the unlawful possession of a handgun was mandatory under the Graves Act, and sentenced defendant to a term of five years, with three-and-one-half years of parole ineligibility. On the charge of third degree possession of marijuana with intent to distribute, the judge sentenced defendant to a flat three-year term of imprisonment to run concurrently with the Graves Act sentence. The court

A-0656-17T1

found aggravating factors N.J.S.A. 2C:44-1(a)(3) and (9), and no mitigating factors.

Against this record, defendant now raises the following arguments.

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.

A. Defendant Did Not Provide an Adequate Factual Basis For His Guilty Plea, and the Trial Court Erred in Relying Upon an Offense That Defendant Was Neither Charged With Nor Pled Guilty To.

B. Defendant's Motion To Withdraw His Plea Should Have Been Granted under State v. Slater, 198 N.J. 145 (2009).

POINT II

ALTERNATIVELY, DEFENDANT SEEKS A REMAND FOR RESENTENCING BECAUSE THE TRIAL COURT INCORRECTLY BELIEVED THAT DEFENDANT WAS SUBJECT TO A MANDATORY THREE-AND-A-HALF YEAR PAROLE INELIGIBILTY PERIOD, WHEN IN FACT, DEFENDANT WAS ELIGIBLE FOR A GRAVES ACT WAIVER.

We reject these arguments and affirm. The argument challenging the trial court's decision to deny defendant's motion to withdraw his guilty plea based on the Slater factors lacks sufficient merit to warrant discussion in a written

15

opinion. R. 2:11-3(e)(2). The record shows the judge correctly found that defendant did not establish a colorable claim of innocence. The argument challenging the sentence imposed by the court is equally without merit. As the State correctly points out in its brief before this court, defendant did not seek a waiver of the Graves Act from the vicinage's Assignment Judge, as provided in N.J.S.A. 2C:43-6.2. Defendant raised the issue with his attorney for the first time after entering into a negotiated plea.

Finally, although N.J.S.A. 2C:43-6.2 authorizes the prosecutor to refer a case to the Assignment Judge for a waiver of the mandatory sentence in a Graves Act offense, State v. Nance, 228 N.J. 378, 394 (2017), in this case the prosecutor did not make such a referral. More importantly, defendant did not request one. As an appellate court, we review defendant's sentence "in accordance with a deferential standard," State v. Fuentes, 217 N.J. 57, 70 (2014). We are not permitted to substitute our judgment for that of the sentencing judge. State v. Case, 220 N.J. 49, 65 (2014). We discern no legal basis to disturb the sentence imposed by the trial judge in this case.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0656-17T1